# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW ANDREW DAVIS,<br><br>Plaintiff,<br><br>v.<br><br>STEWARD SHERMAN, et al.,<br><br>Defendants. | Case No. 1:18-cv-01628-LJO-BAM (PC)<br><br>FINDINGS AND RECOMMENDATION RECOMMENDING DISMISSAL OF THIS ACTION<br><br>(ECF No. 15)<br><br>**FOURTEEN (14) DAY DEADLINE** |

## I. <u>Background</u>

Plaintiff Matthew Andrew Davis is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.[1]

On September 25, 2019, the Court found that Plaintiff's first amended complaint failed to comply with Federal Rule of Civil Procedure 8 and failed to state any cognizable claim for relief. (ECF No. 15.) The Court granted Plaintiff thirty days, running from the date of service of the order, to file either a second amended complaint or a notice of voluntary dismissal. (Id. at 16.) Plaintiff was

---

[1] As noted in the Court's December 28, 2018 screening order, Plaintiff asserts that he is visually impaired and requires large print documents in order to be able to read. As an accommodation, the Court is providing this order in large print.

1

expressly warned that, if he failed to comply with the Court's order, the Court would recommend to the District Judge that this action be dismissed for failure to prosecute and failure to obey a court order. (Id. at 16.) The allotted time period for Plaintiff to file either a second amended complaint or a notice of voluntary dismissal expired on October 28, 2019, and Plaintiff has not complied with the Court's order or otherwise communicated with the Court. Accordingly, the Court recommends dismissal of this action for the reasons discussed below.

## II. Failure to State a Claim

### A. Screening Requirement and Standard

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fail[] to state a claim on which relief may be granted," or that "seek[] monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); see also 28 U.S.C. § 1915A(b).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Moreover, Plaintiff must demonstrate that each defendant personally participated in the deprivation of Plaintiff's rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

Prisoners proceeding *pro se* in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted). To survive screening, Plaintiff's claims must be facially plausible, which requires

2

sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

### B. Summary of Plaintiff's Allegations

Plaintiff is currently housed at California Substance Abuse Treatment Facility and State Prison, Corcoran, where he alleges that many of the events at issue in this action took place. Plaintiff names the following defendants: (1) Steward Sherman; (2) CCRA Appeals Coordinator A. Hernandez; (3) SSA C. Ramos; (4) Rhonda Dotta Skipper, an employee of the Board of Prison Hearing; (5) Tara Doetzeh, an employee of the Board of Prison Hearing; (6) CCI Counselor F. Torres; (7) Fisher, who is employed as a Stanislaus County Superior Court District Attorney; (8) Dina Petrushenko, who is employed as a Stanislaus County Superior Court District Attorney; (9) Stanislaus County Superior Court Judge Joseph Richard; (10) Sweena Pune, who is employed as a Stanislaus County Superior Court Public Defender; (11) Molly Petchenik, a litigation assistant with the Prison Legal Office; (12) Carol Foster, an attorney with the Central California Appellate Program; (13) Stanislaus County Superior Court Judge Stacy P. Speiller; (14) Gabby Sergi, a litigation assistant under Sarah Norman at the Prison Law Office; and (15) Rosen Bien Galvan & Grunfeld[2].

Plaintiff alleges as follows:

> My counselor Torres failed to discharge her duty of initiating due
> process toward entering my eligibility for parole release to a mental

---

[2] Plaintiff does not identify Rosen Bien Galvan & Grunfeld as a defendant in the first amended complaint's caption or list of defendants. However, the Court will screen the allegations made against Rosen Bien Galvan & Grunfeld.

3

> health hospital pursuant to § 2960, § 2962(e)(2)(A)-(O), § 2670, or § 2680. The 60 days for this to be done ended – because she stated she did not know how to perform her job. D.W. Fisher added charges. At my next Board review, and Rhonda Dotta Skipper, along with Tara Doetzeh – failed to order my MDO release to a mental health hospital, charging me with the D.A.s allegation that I had a pocket knife (*sic*) when arrested. They violated my 5th Amendment right against double jeopardy. They further violate[d] my right to adequate placement into a mental health hospital – 8th Amendment constitutional right. Therefore F. Torres – the CCI counselor, A. Hernandez – CCRA, C. Ramos SSA, Rhonda Dotta Skipper – Board staff, Tara Doetzeh – Board staff and D.A. Fisher worked in concert denying me acces[s] to the courts with dil[a]tory appeal prevention tactics, which is the proximate cause of me not being placed in a mental health hospital, resulting in a denial of my right to a granted privilege to release from prison – pursuant to California Constitution Article I, (7) (5th and 14th Amendment of U.S. Constitution. The Defendants are thus li[a]ble for my loss of an integral part of my mental health care.

(ECF No. 11, at 2-3.) Additionally, Plaintiff alleges that:

> In Exhibit 38, S. Smith assured me that I would have a representative (*sic*) to speak for me at my Board hearing. Instead the new counselor (*sic*) called me to the office and told me the hearing was over and I had been denied. Further appeals with staff complaints got ripped up, Exhibit A21. I wrote the Prison Law Office received no help from Gaby or Molly Petchenik, who claim to be my attornys (*sic*) for Coleman and ADA rights. Exhibits 33 and 34. Entering the Superior Coort (*sic*) of Stanislaus – Jooge Speiller denied my right to MDO placement as well. As Judge Richard had. Carol Foster was appointed as appellate defender for me, but refused to represent me. Exhibit A-38. I wrote Rusen Bien Galvin & Grunfeld – they refused to represent me. Exhibit A-41, 42, and 43. Since the judges['] authority has been abused, and the defendants have fail[e]d to discharge their duties my civil injury has a second consequential damage within the meaning of false imprisonment. Such a continuance of wrongful reconviction tactics, are actionable civil injurys (*sic*) – which cause me to bring suit, pursuant to Logan v. Burge U.S.D.C. (N.D. Ill.) Case No. 1:09-cv-05471.

4

(ECF No. 11, at 3-4.)

Plaintiff seeks nominal, compensatory, and punitive damages in the total amount of $6,600,000.00. (Id. at 4.)

**C.     Discussion**

1.     Federal Rule of Civil Procedure 8

Pursuant to Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002) (citation and internal quotation marks omitted).

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678 (citation omitted). This is because, while factual allegations are accepted as true, legal conclusions are not. Id.; see also Twombly, 550 U.S. at 556-57; Moss, 572 F.3d at 969. Therefore, Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citations and internal quotation marks omitted).

In this case, while Plaintiff's complaint is short, it is not a plain statement of his claims. Most of Plaintiff's allegations are vague and conclusory statements unsupported by any facts. Instead, Plaintiff has appended 49 pages of exhibits to his 6-page complaint, apparently anticipating that the Court would cull through the exhibits to ferret out the facts in support of his conclusory allegations. However, Plaintiff must state all of his factual allegations in the body of his complaint. As currently pled, Plaintiff's complaint does not contain enough factual content to

///

allow the Court to draw the reasonable inference that any named Defendant is liable for the misconduct alleged against them. Iqbal, 556 U.S. at 678.

2. Linkage Requirement

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution ... shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 98 S. Ct. 2018, 56 L.Ed. 2d 611 (1978); Rizzo v. Goode, 423 U.S. 362, 96 S. Ct. 598, 46 L.Ed. 2d 561 (1976). The Ninth Circuit has held that "[a] person 'subjects another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Here, Plaintiff fails to adequately link Defendants Sherman, Petrushenko, and Pune to any constitutional deprivation suffered by Plaintiff. While Defendant Sherman is named in the caption of Plaintiff's first amended complaint and Defendants Petrushenko and Pune are named in both the caption and the list of Defendants on page 6 of Plaintiff's first amended complaint, the first amended complaint does not contain any factual allegations asserting what Defendants Sherman, Petrushenko, and/or Pune did, or did not do, that violated Plaintiff's constitutional rights. Therefore, Plaintiff has failed to allege any cognizable claim against Defendants Sherman, Petrushenko, and Pune.

To the extent Plaintiff seeks to hold any Defendant liable based solely upon

their supervisory role, he may not do so. Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of respondeat superior. Iqbal, 556 U.S. at 676–77; Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1020–21 (9th Cir.2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones v. Williams, 297 F.3d 930, 934 (9th Cir.2002).

Supervisors may be held liable only if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); accord Starr v. Baca, 652 F.3d 1202, 1205–06 (9th Cir. 2011); Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009). Supervisory liability may also exist without any personal participation if the official implemented "a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." Redman v. Cnty. of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (citations and quotations marks omitted), abrogated on other grounds by Farmer v. Brennan, 511 U.S. 825 (1970).

Here, since Plaintiff has failed to attribute any of the alleged unconstitutional conduct to any specific individual Defendant, the Court cannot determine if Plaintiff is attempting to hold any supervisory Defendant liable based solely upon the conduct of their subordinates. Nevertheless, to the extent that Plaintiff is attempting to impose liability on any supervisory Defendant based on a respondeat superior theory of liability, this theory of liability is not cognizable under § 1983.

3. "Person" Within the Meaning of § 1983

"Under Section 1983, a 'person' acting under color of law may be sued for violations of the U.S. Constitution or federal laws. The term 'persons' under section 1983 encompasses state and local officials sued in their individual capacities, private individuals and entities which acted under color of state law, and local governmental entities." Garcia v. City of Merced, 637 F. Supp. 2d 731, 760

7

(E.D. Cal. 2008) (internal citation omitted). "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." West v. Atkins, 487 U.S. 42, 49 (1988).

In this case, Plaintiff alleges in his first amended complaint that he "wrote the Prison Law Office received no help from Gaby, or Molly Petchenik, who claim to be my attornys (*sic*) for Coleman and ADA rights." (ECF No. 11, at 3.) Plaintiff also asserts that Defendants Foster, who "was appointed as appellate defender for me," and Rosen Bien Galvan & Grunfeld have refused to represent him. (Id.) However, it is well-settled that an attorney, whether retained or appointed, does not act under color of state law when representing a private client in civil litigation or a criminal defendant. Polk Cnty. v. Dodson, 454 U.S. 312, 318 (1981) ("[A] lawyer representing a client is not, by virtue of being an officer of the court, a state actor 'under color of state law' within the meaning of § 1983."); Briley v. California, 564 F.2d 849, 855 (9th Cir. 1977) ("[A] privately-retained attorney does not act under color of state law for purposes of actions brought under the Civil Rights Act."); Szijarto v. Legeman, 466 F.2d 864, 864 (9th Cir. 1972) (holding that "an attorney, whether retained or appointed, does not act 'under color of' state law."). Therefore, Plaintiff has failed to sufficiently plead that Defendants Sergi, Petchenik, Foster, and Rosen Bien Galvan & Grunfeld acted under the color of state law when they refused to provide Plaintiff with help or refused to represent Plaintiff. Consequently, Plaintiff has not stated any cognizable § 1983 claims against Defendants Sergi, Petchenik, Foster, and Rosen Bien Galvan & Grunfeld.

4. Judicial Immunity

"Judges and those performing judge-like functions are absolutely immune from damage liability for acts performed in their official capacities." Ashelman v. Pope, 793 F.2d 1072, 1075 (9th Cir. 1986). Additionally, judicial immunity

extends to preclude prospective injunctive relief against a state court judge for acts or omissions made in that judge's official capacity. 42 U.S.C. § 1983 ("[I]n any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.") Therefore, "judicial immunity is an immunity from suit, not just from ultimate assessment of damages. Accordingly, judicial immunity is not overcome by allegations of bad faith or malice[.]" Mireles v. Waco, 502 U.S. 9, 11 (1991) (internal citation omitted). Instead, the law is clear that judicial immunity is overcome in only two circumstances: (1) "a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity[;]" and (2) "a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." Id. at 12.

In his first amended complaint, Plaintiff asserts that "Jooge (*sic*) Speiller denied my right to MDO Placement as well. As Judge Richard had." (ECF No. 11, at 3.) Additionally, Plaintiff attached a copy of Defendant Speiller's order denying Plaintiff's state petition for writ of habeas corpus on the grounds that there was some evidence to support the Board of Parole's decision to deny Plaintiff parole and that Plaintiff's allegation that Penal Code section 5068 had been violated was too conclusory to warrant relief. (ECF No. 11, at 44-45.) Therefore, it is clear that Defendants Speiller's and Richard's actions were taken in their judicial capacity. See Stump v. Sparkman, 435 U.S. 349, 362 (discussing factors a court must consider in deciding if an act by a judge is a "judicial" act). Further, Plaintiff has failed to allege any facts demonstrating that Defendants Speiller's and Richard's actions were taken in the complete absence of all jurisdiction. Therefore, Defendants Speiller and Richard are absolutely judicially immune from Plaintiff's § 1983 action.

///

### 5. Absolute Immunity for Parole Board Officials

In his first amended complaint, Plaintiff alleges that Defendants Skipper and Doetzeh, employed as Board of Prison Hearings staff, "failed to order [his] MDO release to a mental health hospital, charging him with the D.A.[']s allegation that [Plaintiff] had a pocket kniffe (*sic*) when arrested." (ECF No. 13, at 2.) However, "parole board officials are entitled to absolute immunity from liability for damages for their actions taken when processing parole applications." Bermudez v. Duenas, 936 F.2d 1064, 1066 (9th Cir. 1991); Sellars v. Procunier, 641 F.2d 1295, 1302-03 (9th Cir. 1981). Therefore, Defendants Skipper and Doetzeh are absolutely immune from § 1983 liability based on a claim that the Defendants denied Plaintiff parole to a mental health hospital.

### 6. Favorable Termination Rule

As a general matter, prisoners may not challenge the fact or duration of their confinement in a § 1983 action. Wilkinson v. Dotson, 544 U.S. 74, 78 (2005). Often referred to as the favorable termination rule or Heck bar, this exception to § 1983's otherwise broad scope applies whenever state prisoners "seek to invalidate the duration of their confinement – either *directly* through an injunction compelling speedier release or *indirectly* through a judicial determination that necessarily implies the unlawfulness of the State's custody." Id. at 81 (italics in original); see Heck v. Humphrey, 512 U.S. 477, 481-82, 487 (1994). Thus, "a state prisoner's § 1983 action is barred (absent prior invalidation) – no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) – *if* success in that action would necessarily demonstrate the invalidity of confinement or its duration." Id. at 81-82. Further, "[t]he California Supreme Court has not distinguished between the application of Heck to § 1983 claims and the application of analogous California law to state-law claims." Hooper v. County of San Diego, 629 F.3d 1127, 1134 (9th Cir. 2011) (citing Yount v. City of Sacramento, 43 Cal.4th 885,

902 (2008)). Therefore, Plaintiff's continuing confinement will bar his § 1983 and state law claims if prevailing on those civil claims "would necessarily imply or demonstrate the invalidity of the earlier conviction or sentence[.]" Beets v. County of Los Angeles, 669 F.3d 1038, 1042 (9th Cir. 2012) (internal punctuation omitted).

Here, Plaintiff seeks to bring § 1983 claims contending: (1) that Defendant Torres "failed to discharge her duty of initiating due process towards entering my eligibility for parole release to a mental health hospital[;]" (2) Defendant Fisher added charges at Plaintiff's next parole board review, which violated Plaintiff's rights to double jeopardy and to adequate placement in a mental health hospital; and (3) Defendants Torres, Hernandez, Ramos, Skipper, Doetzeh, and Fisher "worked in concert denying me access to the courts with dil[a]tory appeal prevention tactics, which is the proximate cause of me not being placed into a mental health hospital, resulting in a denial of my right to a granted privilege to release (*sic*) from prison – pursuant to California Constitution Article I, (7) [] 5th and 14th amendment of the U.S. Constitution." (ECF No. 13, at 2-3.) These claims are challenging the duration of Plaintiff's confinement in prison. With regards to the first claim, although Plaintiff phrases his claim in terms of parole eligibility, Plaintiff is already eligible for nonviolent parole pursuant to California Proposition 57. Further, while Plaintiff has phrased his claims in terms of parole eligibility, double jeopardy, and denial of the right to access the courts, it is clear that what Plaintiff is really challenging is the merits of the Board of Parole Hearings' August 16, 2018 decision to deny Plaintiff Proposition 57 nonviolent parole. (ECF No. 11, at 22-24, 26.)

However, "[f]ew things implicate the validity of continued confinement more directly than the allegedly improper denial of parole. This is true whether that denial is alleged to be improper based upon procedural defects in the parole hearing or upon allegations that parole was improperly denied on the merits." Butterfield v. Bail, 120 F.3d 1023, 1024 (9th Cir. 1997). Therefore, since Plaintiff's three claims necessarily implicates the validity of his continuing confinement, his three claims

are only cognizable if the August 2018 parole denial decision has been reversed or invalidated. Heck, 512 U.S. 481, 486-87 (stating that "in order to recover damages for allegedly unconstitutional conviction or imprisonment … a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus[]"). Here, Plaintiff has failed to allege any facts demonstrating that the August 2018 decision to deny Plaintiff parole has been reversed, expunged, or called into question by a state or federal court's issuance of a writ of habeas corpus. Therefore, the Court determines that the three claims stated above are barred by the favorable termination rule announced in Heck.

  7. Habeas Action

  To the extent that Plaintiff is attempting to challenge the validity of his continuing incarceration, the exclusive method for asserting that challenging is by filing a petition for writ of habeas corpus. It has long been established that state prisoners cannot challenge the fact or duration of their confinement in a § 1983 action, and that their sole remedy lies in habeas corpus relief. Wilkinson, 544 U.S. at 78 ("[A] prison in state custody cannot use a § 1983 action to challenge the fact or duration of his confinement. He must seek federal habeas corpus relief (or appropriate state relief) instead."). In this case, since it is not clear that Plaintiff is seeking habeas corpus relief, the Court declines to convert Plaintiff's § 1983 action into a habeas petition. Trimble v. City of Santa Rosa, 49 F.3d 583, 586 (9th Cir. 1995) ("When the intent to bring a habeas petition is not clear, … the district court should not convert a defective section 1983 claim into a habeas petition.").

  8. Ex Post Facto

  In his first amended complaint, Plaintiff asserts that "[t]he Defendants have violated U.S. Const. Article I § 9, and § 10 which forbids application of ex post facto laws." (ECF No. 13, at 3.) "A change in law violates the Ex Post Facto

Clause of the Federal Constitution when it 'inflicts a greater punishment[] than the law annexed to the crime, when committed.'" Gilman v. Brown, 814 F.3d 1007, 1014 (9th Cir. 2016). However, Plaintiff's Ex Post Facto allegations are conclusory and are not supported by any facts demonstrating how the "Defendants" have violated the Ex Post Facto Clause. Therefore, Plaintiff has not stated a cognizable claim for violation of the Ex Post Facto clause against any defendant.

### 9. Denial of Access to the Courts

In his first amended complaint, Plaintiff states: "Denial of Access to the Court. Appea[l]s coorduwators (*sic*) ripped by appeal appart (*sic*), forced me to remove vital evidence threatening they[] cancel[] my appeal between the first and second level, preventing ex[h]austion." (ECF No. 13, at 2.)

Prisoners have a "fundamental constitutional right of access to the courts." Bounds v. Smith, 430 U.S. 817, 828 (1977). The right of access is grounded in the First and Fourteenth Amendments. Silva v. Di Vittorio, 658 F.3d 1090, 1101–02 ("Under the First Amendment, a prisoner has both a right to meaningful access to the courts and a broader right to petition the government for a redress of his grievances."); Cornett v. Donovan, 51 F.3d 894, 897 (9th Cir. 1995) ("The right of access is grounded in the Due Process and Equal Protection Clauses.").

Claims for denial of access to the courts may arise from the frustration or hindrance of "a litigating opportunity yet to be gained" (forward-looking access claim) or from the loss of a meritorious suit that cannot now be tried (backward-looking claim). Christopher v. Harbury, 536 U.S. 403, 412-15 (2002). In order to allege a violation of the right to access the courts, an inmate must demonstrate that he suffered an actual injury by pleading facts showing "actual prejudice with respect to contemplated or existing [non-frivolous] litigation, such as the inability to meet a filing deadline or to present a claim." Lewis v. Casey, 518 U.S. 343, 348 (1996). The injury requirement is not "satisfied by just any type of frustrated legal claim." Id. at 354–55. It is only satisfied if an inmate is denied access with regard

to direct criminal appeals, habeas corpus petitions, and civil actions brought pursuant to 42 U.S.C. § 1983. Id. "Failure to show that a 'nonfrivolous legal claim ha[s] been frustrated' is fatal" to a denial of access to the courts claim. Alvarez v. Hill, 518 F.3d 1152, 1155 n.1 (9th Cir. 2008).

Here, Plaintiff has not identified who the "appeals coordinators" are, or, put another way, which of the named Defendants allegedly interfered with his right to access the courts. Further, Plaintiff has failed to allege facts showing that he suffered actual prejudice with respect to any contemplated or existing non-frivolous direct criminal appeal, habeas corpus petition, or civil rights action brought pursuant to 42 U.S.C. § 1983 as a result of the appeals coordinators' actions. Therefore, Plaintiff has not stated a cognizable claim for a denial of his constitutional right to access the courts.

To the extent Plaintiff is challenging how his appeals or grievances have been processed, Plaintiff fails to state a cognizable claim. "The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." Wilkinson v. Austin, 545 U.S. 209, 221 (2005). Plaintiff does not a have protected liberty interest in the processing his appeals, and therefore, he cannot pursue a claim for denial of due process with respect to the handling or resolution of his appeals. Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988)). Accordingly, Plaintiff cannot state a cognizable claim based on the handling of his inmate appeals.

        10.    No Constitutional Right to Parole

To the extent Plaintiff is challenging lack of counsel at his Parole hearing or challenging the decision of the Parole Board, Petitioner can show no constitutional violation. There is no constitutional right to counsel at parole consideration hearings. See Dorado v. Kerr, 454 F.2d 892, 896-97 (9th Cir.), cert. denied, 409

U.S. 934 (1972). Further, Plaintiff does not have a section 1983 claim for actions of the parole board. There is no right under the Federal Constitution to be conditionally released [on parole] before the expiration of a valid sentence, and the States are under no duty to offer parole to their prisoners. Swarthout v. Cooke, 562 U.S. 216, 131 S. Ct. 859, 862 (2011) (per curiam).

        11.    State Law Claims

California's Government Claims Act requires that a tort claim against a public entity or its employees be presented to the California Victim Compensation and Government Claims Board (prior to July 1, 2016) or the Department of General Services' Government Claims Program (July 1, 2016 and after) no more than six months after the cause of action accrues. Cal. Gov't Code §§ 905.2, 910, 911.2, 945.4, 950-950.2. Presentation of a timely written claim and action on, or rejection of, the claim are conditions precedent to suit. DiCampli-Mintz v. County of Santa Clara, 55 Cal.4th 983, 989-90 (2012); see also Mangold v. Cal. Pub. Utils. Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995). Therefore, in order to state a tort claim against a public employee, a plaintiff must allege compliance with California's Government Claims Act. DiCampli-Mintz, 55 Cal.4th at 990; see also Mangold, 67 F.3d at 1477.

Here, to the extent that Plaintiff is attempting to bring any state law claims, Plaintiff has failed to allege that he complied with California's Government Claims Act. Accordingly, Plaintiff has failed to state any cognizable state law claims.

**III.    Failure to Prosecute and Failure to Obey a Court Order**

        **A.    Legal Standard**

Local Rule 110 provides that "[f]ailure . . . of a party to comply with these Rules or with any order of the Court may be grounds for imposition by the Court of any and all sanctions . . . within the inherent power of the Court." District courts have the inherent power to control their dockets and "[i]n the exercise of that power they may impose sanctions including, where appropriate, . . . dismissal."

Thompson v. Housing Auth., 782 F.2d 829, 831 (9th Cir. 1986). A court may dismiss an action, with prejudice, based on a party's failure to prosecute an action, failure to obey a court order, or failure to comply with local rules. See, e.g., Ghazali v. Moran, 46 F.3d 52, 53–54 (9th Cir. 1995) (dismissal for noncompliance with local rule); Ferdik v. Bonzelet, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (dismissal for failure to comply with an order requiring amendment of complaint); Malone v. U.S. Postal Serv., 833 F.2d 128, 130–33 (9th Cir. 1987) (dismissal for failure to comply with court order).

In determining whether to dismiss an action, the Court must consider several factors: (1) the public's interest in expeditious resolution of litigation; (2) the Court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions. Henderson v. Duncan, 779 F.2d 1421, 1423 (9th Cir. 1986); Carey v. King, 856 F.2d 1439, 1440 (9th Cir. 1988).

**B. Discussion**

Here, the instant action has been pending since November 2018, and Plaintiff's second amended complaint is overdue. The Court cannot hold this case in abeyance awaiting compliance by Plaintiff. Thus, the Court finds that both the first and second factors weigh in favor of dismissal.

The third factor, risk of prejudice to the defendants, also weighs in favor of dismissal, since a presumption of injury arises from the occurrence of unreasonable delay in prosecuting an action. Anderson v. Air West, 542 F.2d 522, 524 (9th Cir. 1976). The fourth factor usually weighs against dismissal because public policy favors disposition on the merits. Pagtalunan v. Galaza, 291 F.3d 639, 643 (9th Cir. 2002). However, "this factor lends little support to a party whose responsibility it is to move a case toward disposition on the merits but whose conduct impedes progress in that direction," which is the case here. In re Phenylpropanolamine (PPA) Prods. Liab. Litig., 460 F.3d 1217, 1228 (9th Cir. 2006) (citation omitted).

1 | Finally, the Court's warning to a party that failure to obey the Court's order will result in dismissal satisfies the "considerations of the alternatives" requirement. Ferdik, 963 F.2d at 1262; Malone, 833 at 132–33; Henderson, 779 F.2d at 1424. The Court's September 25, 2019 order expressly warned Plaintiff that his failure to comply with that order would result in a recommendation to dismiss this action for failure to prosecute and failure to obey a court order. (ECF No. 15, at 16.) Thus, Plaintiff had adequate warning that dismissal could result from his noncompliance.

Additionally, at this stage in the proceedings, there is little available to the Court which would constitute a satisfactory lesser sanction while also protecting the Court from further unnecessary expenditure of its scarce resources. Plaintiff is proceeding *in forma pauperis* in this action, making monetary sanctions of little use, and the preclusion of evidence or witnesses is likely to have no effect given that Plaintiff has ceased litigating his case.

## IV. Conclusion and Recommendation

Accordingly, for the reasons explained above, it is HEREBY RECOMMENDED that the instant action be dismissed, with prejudice, based on Plaintiff's failure to state any cognizable claim upon which relief may be granted, failure to obey the Court's September 25, 2019 screening order, and failure to prosecute this action.

///
///
///
///
///
///
///
///
///

These Findings and Recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these Findings and Recommendation, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 839 (9th Cir. 2014) (quoting <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **November 18, 2019**  /s/ *Barbara A. McAuliffe*
UNITED STATES MAGISTRATE JUDGE